IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TAMI S. CAGLE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-12-0296 |
| § | |
| CAROLYN W. COLVIN, COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION,[1] § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 7), and Defendant's cross Motion for Summary Judgment and Memorandum in Support (Document No. 8). After considering the cross motions for summary judgment, Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 9), Plaintiff's Rejoinder (Document No. 11), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she therefore should be substituted for Michael J. Astrue as the defendant in this case.

[2] On August 9, 2012, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 13.

**I.     Introduction**

Plaintiff Tami S. Cagle ("Cagle") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income benefits ("SSI"). Cagle argues that: (1) "Defendant erred in finding Movant's Depression and Anxiety was 'not severe;'" and (2) "Defendant erred in failing to discuss Movant's medications and their side effects." Plaintiff's Motion for Summary Judgment (Document No. 7) at 2. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

**II.    Administrative Proceedings**

On May 1, 2007, Cagle applied for supplemental security income benefits, claiming that she has been unable to work since December 31, 1995, as a result of endometriosis, bladder infection(s), scoliosis and low back pain, auto immune diseases, including lupus, depression and anxiety (Tr. 201-203; 235; 238-39; 249). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Cagle requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Earl Crump, held a hearing on April 28, 2008, at which Cagle's claims were considered *de novo*. (Tr. 33-54). On July 25, 2008, the ALJ issued his decision finding Cagle not disabled. (Tr. 102-106). Cagle sought review of the ALJ's adverse decision with the Appeals Council.

The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an

error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On May 7, 2009, after considering Cagle's contentions in light of the applicable regulations and evidence, the Appeals Council remanded Cagle's application to the ALJ for further consideration. (Tr. 109-110). In so doing, the Appeals Council wrote:

> The Administrative Law Judge issued a decision on July 25, 2008. The claimant has asked the Appeals Council to review this decision.
>
> The Appeals Council grants the request for review under the new and material evidence provision of the Social Security Administration regulations (20 CFR 416.1470). Under the authority of 20 CFR 416.1477, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issue:
>
> - The hearing decision finds the claimant has no severe impairment or combination of impairments (Finding 3). Additional evidence provided by the claimant includes pulmonary function testing which indicates severe obstructive airway disease. Further evaluation of this new evidence is necessary to accurately determine the claimant's ability to perform work-related activity on a sustained basis.
>
> Upon remand the Administrative Law Judge will:
>
> - Consider new evidence and endeavor to obtain updated treatment records from all treating providers.
>
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85-16 and 96-8p).
>
> - If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20

> CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Rule 00-4p).
>
> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 109-110).

On March 1, 2010, following that order of remand, a second hearing was held before ALJ Crump. (Tr. 55-96). On April 9, 2010, the ALJ again issued a decision finding Cagle not disabled. (Tr. 11-21). Cagle again sought review with the Appeals Council. The Appeals Council, on November 21, 2011, found no basis for review. (Tr. 1-3). The ALJ's April 9, 2010, decision thus became final.

Cagle has filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 7 & 8). The appeal is now ripe for ruling.

### III.    Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the

burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Cagle had not engaged in substantial gainful activity since April 25, 2007, the date she applied for SSI.[3] [4] At step two, the ALJ found that Cagle's fibromyalgia, lupus, chronic pulmonary insufficiency, asthma, and lumbar back pain were severe impairments, but that her depressive disorder and anxiety disorder were not severe impairments. At step three, the ALJ concluded that Cagle did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ then, prior to consideration of steps four and five, determined that Cagle had the residual functional capacity ("RFC") to perform a limited range of light work that did not involve working around temperature extremes or irritating inhalants.

---

[3] "A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which she applies for benefits, no matter how long she has actually been disabled." *Holmes v. Astrue*, 2009 WL 3190466 *1 (S.D. Tex. 2009).

[4] Cagle's application for SSI is dated May 1, 2007. The ALJ's reference to a filing date of April 25, 2007, is incorrect, but that error has no bearing on the issues raised in this appeal.

At step four, the ALJ found that Cagle had no past relevant work. At step five, using the previously determined RFC, and considering Cagle's age, education, and work experience, and the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the national and regional economy that Cagle could perform and that she was, therefore, not disabled.

In this appeal, Cagle argues that the ALJ erred at step two in finding that her depression and anxiety were not severe impairments. Cagle also argues that the ALJ erred in not considering her medications and their side effects in determining her RFC.

## V. Discussion

At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.[5] The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's

---

[5] "Basic work activities" are "the abilities and aptitudes necessary to do most jobs. Examples of these include:
    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2) Capacities for seeing, hearing, and speaking;
    (3) Understanding, carrying out, and remembering simple instructions;
    (4) Use of judgment;
    (5) Responding appropriately to supervision, co-workers and usual work situations; and
    (6) Dealing with changes in a routine work setting.
20 C.F.R. § 416.921(b).

ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

Under the governing regulations, "If you do not have a *severe* medically determinable physical or mental impairment ... or a combination of impairments that is severe ..., we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(ii) (emphasis added). But because the regulations require a claimant to show only "*a* severe" impairment, that is, *one* severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe. However, even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Here, the ALJ determined at step two that Cagle's depression and anxiety were not severe impairments:

> There are also indications of a depressive disorder and an anxiety disorder. However, there is no evidence that these impairments have imposed more than mild limitations on claimant's functioning for any continuous twelve month period. Therefore, these impairments are not severe.

(Tr. 14). The extensive medical record contains substantial evidence in support of this determination. The record does show that Cagle has consistently asserted, from the time she filed her SSI application in May 2007, that she suffers from depression and anxiety, for which she has

9

long taken prescription medication. (Tr. 239, 252-256). The record also shows that Cagle testified at the first hearing before the ALJ that she has been on anti-depressants for ten years, and that she's had "[a] lot of anxiety, a lot of emotional upheaval," particularly after the death of her spouse in 2005. (Tr. 44). At the second hearing, Cagle testified that her depression has "gotten worse." (Tr. 76). In addition, the medical evidence reveals numerous references to Cagle's depression and anxiety, and prescriptions for anti-depressant and anti-anxiety medications, including Klonopin, Prozac and Zoloft.[6] There is also, as noted by the ALJ in his decision, mental health treatment records for a five month period of time, between March 20, 2008 and August 22, 2008, during which Cagle's depression and anxiety were evaluated, she received some counseling, and was assessed GAF scores of 45 and 50. (Tr. 626-649). What is not in the record, however, is evidence that Cagle's depression and anxiety have had any affect on her ability to perform basic work activities. Of the few mental status examinations in the record, none were accompanied by any findings that Cagle does not have the mental ability to perform basic work activities. Instead, at each instance, Cagle was found to be "able to articulate well with normal speech/language, rate, volume and coherence, thought content normal with ability to perform basic computations and apply abstract reasoning, associations are intact, no evidence of hallucinations, delusions, obsessions or homicidal/suicidal ideation and demonstrates appropriate judgment and insight." (Tr. 768, 774, 793, 800). It was only Cagle's mood and affect that were described as depressed. (Tr. 768, 774, 793, 800). As for the GAF scores of 45 on April 9, 2008, and May 9, 2008 (Tr. 630, 646) and 50 on August 22, 2008, neither

---

[6] Plaintiff points to over thirty references to her depression and anxiety in the medical records. Most of those references, however, are perfunctory and are made in connection with prescription refills or changes. The only substantive assessment and treatment of Cagle's depression and anxiety was done by the Tri County MHMR Services between March 20, 2008 and August 22, 2008 (Tr. 626-649). The ALJ fully considered that evidence in his decision.

by itself equates to any particular limitations on Cagle's ability to perform basic work activities.[7] And, as pointed out by the ALJ in his decision, those GAF scores were assessed in connection with mental health treatment that Cagle discontinued after five months, with Cagle's mental status being considered "stable" upon her discontinuation of treatment. (Tr. 18, 626). Furthermore, a medical expert who reviewed Cagle's medical records prior to that short-term treatment determined that her depressive and anxiety disorders were not severe, and that such impairments caused "no more than minimal limitations due to mental or emotional problems." (Tr. 307-319). Upon this record, substantial evidence supports the ALJ's determination at step two that Cagle's depression and anxiety were not severe within the meaning of *Stone*. The ALJ did not err at step two.

Moreover, even if the ALJ could be said to have erred at step two in his severity determination, such an error was harmless. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Here, the ALJ progressed beyond step two in determining that Cagle was not disabled. *Gills v. Colvin*, No. 3:11-CV-2962-BH, 2013 WL 1294651 *19 (N.D. Tex. 2013) ("application of harmless error analysis is appropriate in cases where the ALJ proceeds past

---

[7] The Global Assessment of Functioning ("GAF") is a measurement "with respect only to psychological, social and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition (DSM-IV), at 32). While a GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job),"*id.*, none of Cagle's GAF scores were accompanied by any findings as to any social or occupational limitations.

step 2 in the sequential evaluation process"). In so doing, he carefully considered Cagle's depression and anxiety and determined at step three that neither impairment met or equaled a listed impairment:

> The claimant's mental impairment does not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction (Exhibit 2F, page 11). The objective medical evidence of record noted that claimant is able to prepare simple meals (Exhibit 2F, page 13). It was noted that the claimant also enjoys knitting and crocheting (Exhibit 12F, page 10).
>
> In social functioning, the claimant has mild difficulties (Exhibit 2F, page 11). The medical record reflected that the claimant was "close" to her mother (Exhibit 12F, page 6). It was noted that the claimant attends movies (Exhibit 2F, page 13). Finally, the claimant testified that she attends church on a weekly basis.
>
> With regard to concentration, persistence or pace, the claimant has mild difficulties. (Exhibit 2F, page 11). It was noted that the claimant knits, crochets, watches television and attends movies (Exhibit 2F, page 13). These activities require some level of concentration, persistence, or pace.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration (Exhibit 2F, page 11). There is no evidence of exacerbations or temporary increases in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two), nor is there a showing of a significant alteration in medication; or documentation of the need for a more structured psychological support system.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The "C" criteria in listing 12.04 require:
>
>> Medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>>
>>> 1. Repeated episodes of decompensation, each of extended duration; or
>>>
>>> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>>>
>>> 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
>
> None of the above stated factors are evidenced by the claimant's medical evidence of record.
>
> The "C" criteria in listing 12.06 require evidence to establish the complete inability to function independently outside the area of one's home.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairment at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). *However, because no mental limitations on claimant's functioning are indicated for any twelve month period, no mental limitations are included in claimant's residual functional capacity.*

(Tr. 15-16) (emphasis added). Then, in determining that Cagle had the RFC to perform a limited range of light work that did not include working around temperature extremes or irritating inhalants, but with no mental limitations, the ALJ also considered as follows the evidence of Cagle's

13

depression and anxiety:

> In terms of the claimant's alleged depressive disorder and anxiety disorder, the objective medical evidence of record confirmed a history of treatment. The claimant received mental health treatment from Tri County MHMR Services from Match 20, 2008 through August 22, 2008. The claimant reported a disturbance in appetite, decreased energy, anhedonia, inattention, insomnia, anxiety, and depression. There was no evidence of homicidal or suicidal ideations. During that time frame, the claimant did not receive counseling in May and June. Furthermore, the claimant terminated the services as she lacked medical coverage and was relocating. At the time of discharge, the claimant scored 50 on the global assessment of functioning (GAF) scale. A score of 50 is indicative of some moderate symptoms or moderate difficulty in social, occupational, or school functioning. However, she was discharged in stable condition (Exhibit 12F, pages 1-16 and Exhibit 15F, pages 2-25), and has received no further mental health treatment.

(Tr. 18). Because the ALJ progressed beyond step two and considered all limitations supported by the record, to the extent there was a step two error it was harmless. *See e.g., Gibbons v. Colvin*, No. 3:12-CV-0427-BH, 2013 WL 1293902 *16 (N.D. Tex. 2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650 *13 (S.D. Tex. 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M-08-264, 2012 WL 13716 (S.D. Tex. 2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five).

As for Cagle's complaints about the ALJ's failure to consider the side effects of her medications, Cagle did testify at the hearing on April 28, 2008, that Elmiron is sedating (Tr. 48). She also testified at the hearing on March 1, 2010, that the steroid shots she is given for lupus make her nauseated, that Zoloft makes her sleepy, and Clonazepam makes her "sleepy and kind of dizzy."

(Tr. 71-72). In addition, in a "Disability Report," Cagle reported that she experienced drowsiness with four of her medications: Alansu, Benedryl, Celebrex, and Urelle. (Tr. 285). Cagle did not, at that time, report any drowsiness or sedating effects from either Zoloft of Clonazepam, and instead listed the side effects from those medications as "None." (Tr. 285).

Cagle is correct that the ALJ did not discuss the alleged side-effects of her medications. Cagle is also correct that the ALJ is required to consider the side effects of a claimant's medications and that failure to do so constitutes error. *Loza*, 219 F.3d at 397; 20 C.F.R. § 416.929(c)(3)(iv). Where Cagle's argument for summary judgment fails is in her failure to address harmless error.

A review of the record, the evidence of alleged side-effects of Cagle's medications, and the ALJ's decision, fully supports the conclusion that the ALJ's failure to address and discuss Cagle's alleged side-effects from her medications was harmless. Aside from the self-described nature of the side effects, which descriptions were themselves inconsistent, there is no objective evidence in the record that Cagle experienced any side effects that limited her ability to engage in basic work activities. In the treatment records from Tri County MHMR Services, it was noted that Cagle had no side effects from her medications. (Tr. 627, 647). That notation in the medical records, coupled with the ALJ's determination that Cagle's testimony was not wholly credible (Tr. 17), makes it inconceivable that a different administrative decision would have been reached if the alleged side effects of Cagle's medications had been specifically discussed by the ALJ. The error associated with the ALJ's failure to discuss the alleged side effects of Cagle's medication is therefore harmless. *See e.g., Schmidt v. Commissioner*, 465 Fed. App. 193, 2012 WL 593276 (3d Cir. 2012) (failure of ALJ to discuss medication side effects was harmless where only evidence of side effects was claimant's own conclusory statements and claimant's statements were not consistent); *Rasmussen v. Astrue*, 254

Fed. Appx. 542, 2007 WL 3326524 (7th Cir. 2007) (finding harmless ALJ's failure to discuss side of effects of medications);

As the ALJ did not err at step two in his determination that Cagle's depression and anxiety were not severe, as any error in the consideration of the alleged side-effects of Cagle's medications was harmless, and as there is substantial evidence in the record to support the ALJ's unfavorable decision at step five, including the testimony of a medical expert and a vocational expert, the final decision of the Commissioner on Cagle's May 1, 2007, application for SSI must be affirmed.

### VI.  Conclusion and Order

Based on the foregoing, and the conclusions that the ALJ did not err at step two and that any error in the ALJ's failure to discuss the side effects of the claimant's medications was harmless, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 8) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this __14th___ day of May, 2013.

_____
Frances H. Stacy
United States Magistrate Judge